■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TYSEAN SAIGO, Appellant. [57 NYS3d 116]—

Judgment, Supreme Court, New York County (Patricia M. Nuñez, J.), rendered May 14, 2015, convicting defendant, after a jury trial, of attempted robbery in the first degree, and sentencing him, as a second felony offender, to a term of eight years, unanimously reversed, as a matter of discretion in the interest of justice, and the matter remanded for a new trial.

The charges against defendant arise out of the theft of sunglasses from a Sunglass Hut store. The store clerk testified that shortly after he opened the store, defendant entered. After

---

trying on several pairs of sunglasses, defendant asked the clerk to step toward him, and informed him that he was going to take a few pairs of sunglasses without paying for them and that if the clerk tried to prevent him from doing so he would break his jaw. When the clerk told defendant to leave, defendant pulled a silver and black "flip knife" out of his pocket. The clerk testified that, although the knife was in the closed position, he could see the silver blade in the casement, and that the knife appeared to be six to seven inches long.

According to the clerk's further testimony, after he stepped away from defendant and put his hands up, defendant put the knife back in his pocket, and began putting sunglasses into his backpack. When defendant saw the clerk looking toward the door, he told the clerk he would stab him in the back if he ran out of the store, and that he also had a gun. Defendant then grabbed the clerk by the arm and tried to push him to the back of the store. At that moment, the store's cordless phone began to ring, but defendant blocked the clerk's effort to pick it up. The clerk told defendant that the phone call was from someone in the company, and that if he did not answer the company would send the police. Defendant then ran out of the store. The clerk locked the door and called 911, reporting that defendant had come into his store and that he was armed. He told the 911 dispatcher that defendant "had a knife but I mean he said he had a gun too, but I don't know."

According to their testimony, several police officers responded to a radio transmission about the robbery, which gave the robber's description and stated that he had "a knife or possibly a firearm." Two of the officers arrived at the store within five minutes of the clerk's 911 call, and stated that the clerk was "jittery, shaking" and "sweaty, nervous" and that it looked like "adrenaline was definitely pumping." The clerk showed the officers footage from security cameras that were in the store. Other officers, after canvassing the area, spotted defendant a few blocks from the store. Defendant noticed them and fled, but was stopped by other officers, who patted him down for weapons but found none. After the clerk was brought to the spot where defendant had been captured and identified him as the robber, he was transported back to the store, where the officers finished watching the surveillance video. The video did not capture much of the interaction between the clerk and defendant because one of the cameras was not recording and because the camera system only recorded when it sensed motion. As a result, no camera recorded the part of the interaction beginning from when defendant asked the clerk to approach

him. Meanwhile, one of the officers returned to the area where they first spotted defendant, to search for the knife. However, despite checking in the wheel wells of vehicles, speaking to some construction workers in the vicinity, looking in garbage cans and down sewer grates, no knife was found.

Defendant was charged with attempted robbery in the first degree, based on the threat of immediate use of a dangerous instrument, and with criminal possession of a weapon in the third degree. During the charge conference, the court asked the parties if they had any requests to charge, specifically, "anything that isn't already contained in the standard charge." Defendant and the People both stated that they had no additional requests. After summations, the court charged the jury and, in instructing it on the elements of the crime of attempted robbery in the first degree, defined the completed crime of robbery in the first degree as "when [the defendant] forcibly steals property and when, in the course of the commission of the crime, that person uses or threatens the immediate use of a dangerous instrument." The court asked if there were any exceptions to the charge and both parties answered no. The court asked if either party wanted any additional instructions. Defendant's only request was for an adverse inference charge, which the court denied. During deliberations, the jury asked the court to read back the definitions of the two charges. After consulting with the parties, who did not request any change to the initial charge, the court repeated its initial instructions. Ultimately, the jury convicted defendant of attempted first-degree robbery but acquitted him of third-degree weapon possession.

Defendant does not dispute that he failed to preserve his objection to the jury charge on attempted robbery. Accordingly, he asks us to exercise our interests-of-justice jurisdiction to reach the issue. There is precedent for exercising such jurisdiction in cases where a jury instruction was "manifestly incorrect" (*People v Sandoval*, 56 AD3d 253, 255 [1st Dept 2008], *lv denied* 11 NY3d 930 [2009]). Defendant urges us to follow that precedent, arguing that the jury charge misstated the elements of the crime of first degree robbery. Defendant is correct in this regard. On its face, Penal Law § 160.15 (3), under which defendant was charged, would appear to require conviction even if a person threatened to use a dangerous instrument that he did not in fact possess. However, the requirement for actual possession is an essential element that has been judicially engrafted onto the statute (*see People v Ford*, 11 NY3d 875, 878 [2008]). The People argue that the court technically issued

a correct charge, because the CJI jury instruction for "Attempt to Commit a Crime" provides for the court to merely "read [the] statutory definition of [the completed] crime and any defined terms as set forth in CJI for that crime" (CJI2d[NY] Penal Law § 110.00). Because the statutory definition of robbery in the first degree does not, as stated above, require actual possession, they argue, the court's instruction cannot be criticized. We reject this reasoning, because it reads out of the CJI instruction the words "as set forth in CJI for that crime" (*id.*). The current version of the CJI charge for Penal Law § 160.15 (3) expressly refers to the possession requirement by stating, in pertinent part:

"In order for you to find the defendant guilty of this crime, the People are required to prove, from all the evidence in the case beyond a reasonable doubt, both of the following two elements:

"1. That on or about (*date*), in the county of (*county*), the defendant, (*defendant's name*), forcibly stole property from (*specify*); and

"2. That in the course of the commission of the crime [*or* of immediate flight therefrom], the defendant [or another participant in the crime] possessed a dangerous instrument and used or threatened the immediate use of that dangerous instrument" (CJI2d[NY] Penal Law § 160.15 [3] [emphasis added]).

Defendant contends that the court's failure to give the proper instruction was not harmless error, based on the fact that the jury acquitted him of the possession charge. The People counter that the fact of the acquittal is not dispositive, because it is likely that the jury believed that defendant actually possessed the knife (which would make irrevelant the court's omission on the attempted robbery charge), but acquitted him of possession because it did not believe the prosecutor satisfied her burden of proving that defendant intended to use the knife unlawfully against the store clerk. We reject this argument as too speculative to justify excusing the court's erroneous charge. This is especially so where the failure of police to recover the knife and its absence from the video footage allows for the reasonable possibility that the jury did not believe defendant possessed one. Further, the People's theory that the jury believed defendant possessed the knife, but acquitted him of the possession count because it did not believe that he intended to use it unlawfully, conflicts with the jury's finding, implied in its conviction of defendant for attempted robbery in the first degree, that he threatened the clerk with the knife. Accordingly, there is sufficient reason to believe that the erroneous jury charge

had a prejudicial effect on defendant, and we exercise our interest-of-justice jurisdiction to remand for a new trial. Concur—Sweeny, J.P., Renwick, Mazzarelli and Manzanet-Daniels, JJ.

Motion to file a letter granted.